STATE OF ARIZONA and W. Coy Cox, Sheriff, Pima County, Arizona, Appellants,

v.

George WASHINGTON, Jr., Appellee.

George WASHINGTON, Jr., Cross-Appellant,

v.

STATE OF ARIZONA and W. Coy Cox, Sheriff, Pima County, Arizona, Cross-Appellees.

Nos. 75–3634, 75–3689.

United States Court of Appeals, Ninth Circuit.

Dec. 3, 1976.

As Modified Jan. 21, 1977.

* *See Wanda Petroleum*, 217 NLRB No. 62 (April 11, 1975).

**830**

A. Bates Butler, III, Deputy County Atty. (argued), of Pima County, Tucson, Ariz., for appellants.

Ed Bolding (argued), Tucson, Ariz., for appellee.

Before MERRILL, KILKENNY and ANDERSON, Circuit Judges:

KILKENNY, Circuit Judge:

This appeal concerns the propriety of a retrial of George Washington, Jr. [appellee] following the declaration of a mistrial in state court. The district court conditionally granted the appellee's petition for a writ of habeas corpus pending appeal to this court. We affirm and order the immediate execution of the writ.

## FACTS

### FIRST TRIAL AND APPEAL

The appellee was charged in the Arizona state court in February of 1971 with murder. Prior to trial, he moved for the production of all Brady[1] materials. When the prosecutor denied having any Brady material in his file, the trial commenced and the appellee was found guilty of first degree murder (May 21, 1971).

On appeal to the Arizona Supreme Court, the case was remanded for a hearing on appellee's motion for a new trial. At the end of the lengthy hearing, the trial judge granted the motion. On the state's appeal, this order was affirmed on which appeal the Arizona Supreme Court held that the suppression of the evidence was clearly prejudicial to the appellee and that a new trial was warranted.

1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Subsequently, the appellee filed a motion to dismiss, contending that the double jeopardy clause prohibited his reprosecution and that he had been denied a speedy trial. This motion was denied on December 13, 1974.

## SECOND TRIAL, MISTRIAL, AND APPEAL

The *voir dire* for prospective jurors in the second trial began on January 7, 1975. During his *voir dire,* the prosecutor informed the veniremen that four years had passed since the commission of the crime and that witnesses memories were likely to fade. As an introduction to the notions of impeachment and refreshing recollection, the prosecutor further informed them that many of the witnesses had been involved "in at least two prior proceedings." Defense counsel moved for a mistrial out of the presence of the jury on the basis of, *inter alia,* the prosecutor's reference to these "two prior proceedings." This motion was denied. During his *voir dire* of the jury, defense counsel informed the prospective jurors that there had in fact been a prior trial and he asked them to disregard that fact.

The relevant remarks of defense counsel in his opening statement follow:

"You will hear that that evidence was suppressed and hidden by the prosecutor in that [first] case. *You will hear that that evidence was purposely withheld. You will hear that because of the misconduct of the County Attorney at that time and because he withheld evidence, that the Supreme Court of Arizona granted a new trial in this case."* [Emphasis supplied.]

Just after the noon recess, taken shortly after these remarks were made, the state moved for a mistrial on the ground that, *inter alia,* the defense counsel's allegations of prosecutorial misconduct were highly prejudicial and that the state could not get a fair trial. The court expressed concern that the proceedings were turning into a trial of the county attorney's office but, nevertheless, denied the motion.

The state renewed its motion the following morning before the jury was called. After argument by both sides concerning the propriety of defense counsel's mention of the Arizona Supreme Court's memorandum opinion, the court granted the motion, saying:

"Based upon defense counsel's remarks in his opening statement concerning the Arizona Supreme Court opinion and its effect for the reasons for the new trial, the motion for mistrial will be granted."

On January 24, 1975, the appellee filed a special proceeding in the Supreme Court of Arizona in which he claimed that retrial was barred by both the double jeopardy clause and the due process clause of the United States Constitution. The Supreme Court declined to accept jurisdiction.

On April 4, 1975, the appellee filed a petition for a writ of habeas corpus in the district court. The petition was granted on the ground that the record contained nothing to indicate that the state trial judge found "manifest necessity" for this grant of a mistrial.

From this ruling, and from an additional district court order denying the state's motion to reopen the evidence, all parties have appealed.

## ANALYSIS

The constitutional standards for review in mistrial cases were first enunciated by Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824):

". . . the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.* at 580.

The concepts of "manifest necessity" and the "ends of public justice" are thus firmly embedded in our constitutional history and are central to the solution of all double jeopardy inquiries. *United States v. Sanford,* —— U.S. ——, 97 S.Ct. 20, 50 L.Ed.2d

17 (1976), *rev'g.* 536 F.2d 871 (CA9 1976); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

■ The power to discharge a jury prior to verdict is discretionary with the trial court, but should be employed only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes; . . ." *Perez,* 22 U.S. at 580. As stated in *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971):

". . . the *Perez* doctrine of manifest necessity *stands as a command to trial judges not to foreclose the defendant's option [to take his case to the original jury] until a scrupulous exercise* of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." [Emphasis supplied.]

■ In the absence of clear abuse, we are normally inclined to uphold discretionary orders of this nature. In the usual case, the trial judge has observed the complained-of event, heard counsel, and made specific findings. Under such circumstances, a mistrial declaration accompanied by a finding that the jury could no longer render an impartial verdict would not be lightly set aside.

■ The facts before us, however, reveal a dissimilar set of circumstances and no findings whatsoever. We agree with the state that the remarks made by defense counsel in his opening statement were improper.[2] However, we decline to imply from this impropriety that the jury was prevented from arriving at a fair and impartial verdict. If this was the case, the trial judge should have so found. He at no time, however, indicates the reason(s) why he granted the mistrial. Furthermore, his short order, quoted *supra,* is not susceptible

to any inference that will fill this void. In the absence of any finding by the trial court or any indication that the court considered the efficacy of alternatives such as an appropriate cautionary instruction to the jury, we must conclude that neither of the tests of *Perez* ("manifest necessity" or "ends of public justice") has been met. We do not hold that these words are talismanic; we hold only that this particular record fails to reveal a "scrupulous exercise of judicial discretion," and that more consideration should have been given to the appellee's "valued right to have his trial completed by a particular tribunal." *Jorn* at 484–5, 91 S.Ct. at 557. We have reluctantly concluded that the double jeopardy clause precludes a retrial of the appellee.

In view of our disposition of this issue, we need not reach the remaining issues advanced by the parties.

AFFIRMED.

MERRILL, Circuit Judge, with whom Judge ANDERSON concurs, concurring:

I concur with Judge Kilkenny but would like to emphasize the fact that a finding of manifest necessity was not implicit in the order granting mistrial.

The question to which such a finding is directed in a case such as this is whether misconduct was such as to prejudice the jury beyond remedy by a cautionary instruction or other means and thus preclude fair trial by that jury. It is not enough to find that certain conduct was improper. The critical question is the effect of that conduct upon the jury.

Here the greater part of argument on the motion for mistrial was devoted to the question of whether the remarks of defense counsel were improper—whether the Arizona Supreme Court decision could properly be brought to the jury's attention. When the motion for mistrial was first argued the judge, at one point, indicated that if the

---

2. What the Supreme Court of Arizona said about the conduct of the county prosecutor has no relevance or materiality on the issue of appellee's innocence/guilt. Furthermore, Rule 48(c) of the Rules of the Supreme Court of

Arizona provides that memorandum decisions ". . . shall not be regarded as precedent nor cited in any court except for the purpose of establishing the defense of res judicata, collateral estoppel or the law of the case."

supreme court decision was not admissible in evidence, and reference to it was therefore improper, he was disposed to grant mistrial. At the conclusion of that argument mistrial was denied, because the court was not ready to rule on admissibility, but state counsel was invited to renew the motion at any appropriate time. The motion was renewed the following day and an Arizona rule of practice was, for the first time, called to the court's attention. It provided that on new trial reference could not be made to the earlier trial. At the conclusion of argument mistrial was granted. While manifest necessity was also argued on this occasion, absent findings that manifest necessity existed, it is quite possible that the grant of mistrial was based on the fact that the impropriety of counsel's conduct had been established without reaching the question whether there could, nevertheless, be a fair trial.